IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YARITZA A.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL NO. 20-1292 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner"). Docket No. 1. On April 29, 2020, Plaintiff filed a motion requesting the Court to reverse the Commissioner's final decision denying disability benefits because the decision was unsupported by substantial evidence, as required by 42 U.S.C. § 405(g). Docket No. 20. The Commissioner opposed (Docket No. 23) and both parties had the opportunity to present oral arguments during a hearing held on October 13, 2021. Docket No. 30.

The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 7. After careful review of the administrative record, the briefs on file and the arguments raised by the parties during the hearing, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL BACKGROUND**

On September 1, 2016, Plaintiff, who worked as a caretaker at an elderly care facility, filed an application for disability insurance benefits due to cerebral aneurysm, cardiac arrythmia, vasovagal, low blood pressure and a cerebrovascular accident (Tr[2]. 902-903; 933). Plaintiff claims that her disability began on May 9, 2015 (Tr. 902-903). Plaintiff's application was denied initially and upon reconsideration (Tr. 779-800). Therefore, Plaintiff requested a hearing before an

---

[1]    Plaintiff's last name is omitted for privacy reasons.

[2]    "Tr." refers to the transcript of the record of proceedings.

1

Administrative Law Judge ("ALJ") and, on March 13, 2019, a hearing was held before ALJ Ruy V. Díaz (Tr. 34-66). Represented by counsel, Plaintiff testified before the ALJ, and Vocational Expert ("VE") Dr. Héctor Puig also testified during the hearing. Id.

On March 22, 2019, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of May 9, 2015 through September 30, 2016, the last date insured (Tr. 21-28). Plaintiff asked the Appeals Council to review the final decision issued by the ALJ and, on April 24, 2020, the Appeals Council denied this request (Tr. 1-8), making the Commissioner's decision the final decision for review by this Court. On June 23, 2020, Plaintiff filed the Complaint, which the Commissioner answered on March 15, 2020, and both parties filed supporting memoranda. Docket Nos. 1, 16, 20 and 23.

## II.   LEGAL FRAMEWORK

### A.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript of the record. 42 U.S.C. § 405(g). In reviewing a Social Security decision, the Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See Id.; Seavey v. Barnhart, 276 F. 3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary of Health & Human Services, 76 F. 3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. See Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. See Purdy v. Berryhill, 887 F. 3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. See Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld by the court if a reasonable mind, reviewing the evidence in the record, could accept them as adequate to support his conclusion. See Rodríguez v. Secretary of Health and Human

Services, 647 F. 2d 218, 222 (1st Cir. 1981). And even if there is also substantial evidence in support of Plaintiff's position, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision, if supported by substantial evidence. See 20 C.F.R. § 404.1546(c); Rodríguez Pagán v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987). Therefore, reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim or if the record contains no "evidence rationally adequate...to justify the conclusion" of the ALJ. Manso–Pizarro, 76 F.3d at 16.

In reaching the final decision, it is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence in the record. See Purdy v. Berryhill, 887 F. 3d 7 (1st Cir. 2018). Courts will not second guess the Commissioner's resolution of conflicting evidence. See Irlanda Ortiz v. Secretary of Health & Human Services, 955 F. 2d 765, 769 (1st Cir. 1991). In sum, this court's role is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." Seavey v. Barnhart, 276 F.3d at 9.

**B.     DISABILITY DETERMINATION BY THE SSA: FIVE STEP PROCESS**

To receive benefits under the Social Security Act, the ultimate question is whether Plaintiff is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 423. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir.1982) (quoting 42 U.S.C. § 423(d)(2)(A)). Plaintiff generally has the burden of proving that he has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Rivera–Tufiño v. Commissioner of Social Security, 731 F.Supp.2d 210, 212–13 (D.P.R.2010). Further, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status or his date last insured. See Cruz Rivera v. Secretary of Health & Human Services, 818 F. 2d 96, 97 (1st Cir. 1986).

In determining whether a claimant is disabled, the Commissioner engages in a five-step sequential evaluation. See 20 C.F.R. § 404.1520; Bowen, 482 U.S. at 140-142; Goodermote v.

3

Secretary of Health and Human Services, 690 F.2d 5, 6–7 (1st Cir.1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. See 20 C.F.R. § 404.1520(b). If not engaged in substantial gainful activity, the decision-maker moves to the second step, where he must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c). A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. See López-González v. Comm'r of Soc. Sec., 59 F. Supp. 3d 372, 378 (D.P.R. 2014) (citing 20 C.F.R. § 404.1520(c)). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. Mateo Rivera v. Commissioner, 2020 WL 7786920, at * 3 (D.P.R.) (citing McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986)).

If the impairment or combination of impairments is severe, the third step applies. At this point, the ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment", or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). See 20 C.F.R. § 404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. See 20 C.F.R. §§ 404.1520(e) and 404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). However, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that claimant can perform, in view of claimant's RFC, age, education and work experience. See 20 C.F.R. § 404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F. 2d 520, 524 (1st Cir. 1989). If there are none, then the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

## III.     DISCUSSION

Plaintiff argues, in essence, that the ALJ's RFC determination regarding the estimated time that Plaintiff would be off task because of impairment or treatment-related absences is erred and that the ALJ failed to give proper weight to Plaintiff's treating physician's opinion regarding her ability to work. The Commissioner sustains that the ALJ's decision was based on substantial evidence on the record. The Court agrees with the Commissioner.

### A.     THE ALJ DECISION

At step one of the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability through her last date insured (Tr. 23). At step two, the ALJ determined that Plaintiff had the following severe impairments pursuant to 20 C.F.R. §404.1520(c): s/p subarachnoid hemorrhage, mitral valve prolapse, sinus tachycardia, headaches, vasovagal syncope (Tr. 23). Then, at the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-24). Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC (Tr. 24-26).

After considering the entire record and all of Plaintiff's symptoms, the ALJ concluded that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. §404.1567(a) (Tr. 24). The ALJ specifically concluded that Plaintiff had the capacity to perform the following tasks: lift 10 pounds occasionally and less than 10 pounds frequently; carry 10 pounds occasionally and less than 10 pounds frequently; sit for six hours, stand for 2 hours, alternate to sitting for 3 minutes, after every one hour of standing; walk for 2 hours, alternate to sitting for 3 minutes, after every one hour of walking; occasionally climb ramps and stairs, and never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel and crawl; never crouch; never work at unprotected heights, moving mechanical parts or operate a motor vehicle (Tr. 23). In addition, the ALJ stated in the RFC that **Plaintiff could be expected to be absent from work one (1) day a month**. Id. (emphasis provided).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the objective medical evidence, opinion evidence and other evidence (Tr. 26). To reach this conclusion, the ALJ

considered that even though Plaintiff reported general body pain, headaches, fatigue, and chest pain, she admittedly retained the ability to cook, clean, and shop at the store for groceries (Tr. 24, 84-91; 92-99). The ALJ also considered Plaintiff's testimony regarding the alleged effects of her impairments in her daily activities and noted that Plaintiff's decision not to take prescribed medications for her condition was unjustified. Upon evaluating the consistency of Plaintiff's symptoms with the record under the factors described in 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 16-3p, the ALJ deemed that her allegations of debilitating symptoms were not wholly consistent with the evidence in record (Tr. 25).

In formulating the RFC, the ALJ considered the overall record which revealed that Plaintiff was treated at emergency care units numerous times for headaches, fatigue, dizziness, chest pain and weakness of extremities; and that Plaintiff was hospitalized about a dozen times[3] after the alleged onset date (Tr. 25). The ALJ also noted that Plaintiff was treated and discharged from visits to the emergency room or hospital without mention of residual limitations. Id.

Further, the ALJ appears to have relied on the fact that Plaintiff's medical records showed a general improvement in her conditions. For instance, in May 2015 a brain MRI showed left occipital venous angioma and probable saccular aneurysm, and a brain CT scan from July 2015 showed a suspected small acute subarachnoid hemorrhage at the right frontal lube (Tr. 154, citing 170, 180-202; 203-231; 248-295; 296-331; 418; 1104-1123). However, by June 2015, a lipid panel blood analysis showed no high risk, and a physical exam showed she retained adequate motor strength and neurological responses in the extremities (Tr. 25, 1108, 1110). Further, a chest x-ray from February 2016 showed normal heart and pulmonary vascularity; and by June 2016 a brain CT scan showed normal intracranial anatomy and preserved ventricular system (Tr. 25, 203-231; 248-295; 296-331; 1104-1123).

With regards to the medical opinions on record, the ALJ gave little weight to the Medical Reports rendered on June 21, 2016 and July 19, 2016 by Plaintiff's cardiologist, Dr. Francisco Guzmán López ("Dr. Guzmán"), regarding her inability to perform work activities (Tr. 25, 411-429; 777-778; 1253-1263; 1585-1593). Little weight was afforded by the ALJ for the following reasons: (1) Dr. Guzmán was initially of the opinion that Plaintiff could not perform exercise, even

---

[3] Pursuant to the records cited by the ALJ in his determination, Plaintiff was *treated* at the emergency care unit more than a dozen times; however, she was admitted to the hospital for prolonged periods on three occasions during the coverage period: May 9-20, 2015 (Tr. 1012-1103); June 5-10, 2015 (Tr. 1104-1123) and July 18-21, 2015 (Tr. 1153-1168).

at a low level; however, a few days after the date last insured, he indicated that Plaintiff could exercise as tolerated; (2) Dr. Guzmán's opinions were unsupported by specific medical findings in the progress notes, and (3) the determination regarding disability was an issue reserved for the Commissioner (Tr. 25, 411-429; 777-778; 1253-1263; 1585-1593). The ALJ also afforded little weight to the opinions rendered by both State Agency Examiners – Dr. Brenda Concepción and Dr. Florentino Figueroa – because they deemed that Plaintiff's conditions were non-severe, whereas the ALJ concluded that the overall evidence demonstrated that Plaintiff's conditions were severe and could cause functional limitations (Tr. 25).

After determining Plaintiff's RFC, the ALJ concluded at the fourth step of the process that Plaintiff was not able to perform her past relevant work as nurse aide, as defined in the Dictionary of Occupational Titles (Tr. 26). Neither party disputes this conclusion.

The ALJ ended the sequential inquiry at step five when he concluded, after adopting the VE's testimony, that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC (Tr. 26-27). Specifically, the ALJ concluded that Plaintiff was able to perform the requirements of representative occupations such as: addresser, documenter, and surveillance systems monitor. Id. The ALJ further concluded that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles (Tr. 27). Consequently, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

**B.     PLAINTIFF'S ALLEGATIONS OF ERROR**

Plaintiff claims that the ALJ's RFC determination is erred on two grounds: (1) by not giving proper consideration to Plaintiff's absenteeism and consequent inability to attend work, and (2) by giving little weight to the opinion rendered by Plaintiff's treating physician regarding her ability to work. Docket No. 20 at pages 5-9.[4]

---

[4] Plaintiff mentions two additional arguments in support of her request to remand the Commissioner's decision. These are: (1) that age alone cannot be used to find Plaintiff not disabled pursuant to 20 C.F.R.§404.1563, and (2) that Plaintiff's complaints regarding the severity of her chest pain were credible since they were consistent with her medical treatment history. These arguments are mentioned in passing and are not even slightly developed in Plaintiff's brief. It has long been held that arguments not fully developed or made in passing are deemed waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Thus, the Court need not expend time and effort on these arguments.

1. **Absenteeism in the RFC[5]**

Plaintiff claims that her hospitalizations and frequent visits to the emergency room during the years 2015 and 2016 present a pattern of absenteeism that would render her incapable of performing any job. Thus, Plaintiff sustains that the ALJ erred in determining in the RFC that she would be expected to be off work only one day a month. Plaintiff posits that this calculation fails to take into account the actual time off work that she would need to attend to her medical impairments. And that, had the ALJ informed the VE in the hypothetical questions posed during the hearing that Plaintiff would be off work more than one day a month, the VE would have found that there are no jobs in the economy that Plaintiff could perform. In response, the Commissioner alleges that the State Agency Examiners did not assess any functional limitations relating to chronic absences and that, pursuant to the VE's testimony, an individual would have to exceed three days of monthly absences before being deemed precluded from participating in the national economy, and Plaintiff did not demonstrate that she would likely be absent from work more than three times a month.

Absenteeism "meets the definition of a non-exertional limitation under 20 C.F.R. §404.1569(a)" since it restricts the ability to meet the demands of jobs other than strength demands, such as sitting, standing, walking, lifting, carrying, pushing, or pulling. Reed v. Saul, 2020 WL 4938341, at *7 (D. Mass.). Courts have established that ALJs must address issues of absenteeism in disability determinations. See López-López v. Colvin, 138 F. Supp. 3d 96, 113–14 (D. Mass. 2015); Walker vs. Barnhart, 2005 WL 2323169, at *18 (D. Mass.) ("[t]he ALJ erred by failing to consider -- by either accepting or explicitly discrediting -- the record evidence […] regarding how frequently she could be expected to miss work due to [her condition]"). Accordingly, the ALJ in this case had a duty is to address the issue of how often Plaintiff would potentially miss work and

---

[5] Plaintiff's argument that she is incapable of working as a result of her potential pattern of absenteeism is based on an incorrect premise: that the VE testified during the hearing that a person *could* perform gainful employment even if he or she is off task fifteen (15%) of the time. The VE's testimony during the hearing was exactly the opposite. The VE testified that a person who would be off task 15% of the time, in addition to regular breaks, *could not* perform any jobs (Tr. 62). Next, Plaintiff sustains that the ALJ determined that Plaintiff needed additional breaks of 3 minutes after each hour of standing and sitting, and that this was equivalent to an estimated total of twenty-four (24) minutes per workday in rest breaks, which would not be allowed under local labor laws. Again, this argument is a mischaracterization of the ALJ's determination regarding Plaintiff's RFC. The RFC determination simply states that Plaintiff had to alternate positions when standing or walking. Specifically, the RFC states that after one hour of standing, Plaintiff had to change positions and sit for 3 minutes (Tr. 23). And that after every hour of walking, Plaintiff had to alternate positions while working; not that a 24-minute break from work would be required daily.

the impact of Plaintiff's absenteeism on her ability to hold a job. See Rosario Mercado v. Saul, 2020 WL 2735980 at *11 (D. Mass.). The ALJ did consider Plaintiff's potential absenteeism but rejected that such an absenteeism would impede Plaintiff from performing work.

The ALJ concluded that absenteeism *was* a potential limitation on Plaintiff's ability to sustain gainful employment and, consequently, accounted for Plaintiff being off task for one (1) day per month. To reach this conclusion, the ALJ acknowledged Plaintiff's frequent visits to the emergency room and multiple hospitalizations and noted that Plaintiff was treated and discharged without residual limitations (Tr. 25). The ALJ also noted the results of Plaintiff's CT and MRI scans and observed a degree of improvement as the coverage period progressed.[6] In addition, the ALJ noted Plaintiff's ability to perform certain daily activities, considered the opinions rendered by Plaintiff's treating physician, the reports rendered by the State Agency Examiners, and Plaintiff's testimony during the hearing. See 20 C.F.R. §404.1545(a)(1); SSR 96-8p. The result of this analysis was the inclusion of a one-day/month potential absence as a non-exertional limitation in Plaintiff's RFC. Therefore, the ALJ complied with his obligation to evaluate the impact that potential absenteeism would have on Plaintiff' ability to sustain a job and the Court must affirm even when evidence in the record could potentially support a different conclusion. See Rodríguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971); Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975)) (resolution of conflicts in the evidence is for the Commissioner); see also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F. 2d 765, 770 (1st Cir. 1991) (citing Rodríguez Pagán v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987)) (Commissioner's decision must be upheld when supported by substantial evidence even when the record could support a different conclusion).

The VE's testimony is not contrary to the RFC determination. In response to hypothetical questions, the VE testified that a person could perform certain sedentary work even when that person had to be off work once a month but that there would be no jobs available for a person off

---

[6] The Court further notes that Plaintiff's medical records reveal that she sought medical attention (by visiting an emergency room or by hospitalization) from the alleged onset date of May 9, 2015 until December 31, 2015, a total of **forty-eight (48) days** in eight (8) months (Tr. 1012-1080; 1081-1103; 1104-1123; 1133-1152; 1153-1168; 1169-1216; 1264-1271; 1301-1304); and from January 1, 2016 until the date last insured of September 30, 2016, a total of **eight (8) days** in nine (9) months (Tr. 1217-1252; 1361-1390). This significant decrease in visits to the hospital, which his part of the record considered by the ALJ, provides additional support for the ALJ's determination that Plaintiff would likely be absent from work once a month.

task 15% of the time in addition to normal breaks, nor would there be jobs available for a person absent from work 3 times during a regular month because this would surpass the employer's absenteeism tolerance, regardless of the RFC (Tr. 61-63). As testified by the VE, an absentee rate of once a month is within the range of what is acceptable to be able to perform a job in the national economy. Therefore, the ALJ did not overstep boundaries by establishing a one-day monthly absence as a non-exertional limitation in Plaintiff's RFC. See Hodgson v. Berryhill, 2018 WL 7504073 (D.N.H. 2018) (citing Brownell v. Berryhill, 2018 WL 3150222, at *11 (D. Mass. 2018)) (claimant's RFC is "not a medical assessment, but instead is an administrative decision "reserved to the Commissioner.").

**2. Treating Physician's Opinion**

Plaintiff sustains that the ALJ failed to give the appropriate weight to the opinion of her treating physician, Dr. Guzmán, who concluded that Plaintiff was unable to perform any work activity. Since this case was filed before March 27, 2017, the rules established in 20 C.F.R. § 404.1527 apply. See 20 C.F.R. §404.1527. Under these rules: "(1) the greatest weight, and sometimes controlling weight, is given to opinions from medical sources who have treated a claimant; (2) lesser weight is given to opinions from sources who have examined but not treated the claimant; and (3) the least weight of all is given to opinions from sources who have neither treated nor examined the claimant." Paquet v. Berryhill, 2019 WL 1487585 *6 (D.N.H. 2019) (citing 20 C.F.R. § 404.1527(c)(1)-(2)). The regulations describe the factors that must be considered when determining the weight to be given to a medical opinion. Id. (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ is not allowed to ignore the opinion of treating physicians and must give these opinions proper consideration. Id. (citing SSR 96-5p). The regulations do allow the ALJ to discard opinions of treating physicians as long as these have been considered and an explanation provided as to why these are to be discredited. Id. Notwithstanding the foregoing, "the regulations define the term 'medical opinion' to exclude opinions on issues reserved to the Commissioner, such as "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work.'" Id. (citing 20 C.F.R. §404.1527(d)(1)).

In the opinion rendered by Dr. Guzmán on July 19, 2016, he stated that, in his medical opinion, Plaintiff was unable to work (Tr. 1256). The ALJ explained that he gave Dr. Guzmán's opinion limited weight because it was inconsistent with Plaintiff's ability to exercise and because it was not premised on evidence that could be ascertained in his progress notes. The ALJ further

explained that Dr. Guzmán's opinion that Plaintiff was disabled was an issue reserved for the Commissioner (Tr. 25). Therefore, under the controlling weight analysis, and as directed by SSR 96-5p, the ALJ did consider the "supportability" of Dr. Guzmán's opinions and the consistency of his findings with the record as a whole. In a case such as this one where the treating physician's opinion is inconsistent with other authoritative evidence in the record, "the conflict is for the Commissioner—and not the court—to resolve." August v. Astrue, 2007 WL 737766 at *6 (D. Mass.) (citing Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir.1981)). See also Pérez Padilla v. Comm'r of Soc. Sec., 286 F. Supp. 2d 130, 133 (D.P.R. 2003) (citing Colón v. Secretary of Health & Human Serv., 877 F.2d 148 (1st Cir.1989)) ("[c]ourts are not to re-weight the evidence or substitute its judgment for that of the Commissioner when the record before the administrative agency has been comprehensive and thorough."). The ALJ did not ignore Dr. Guzmán's opinion regarding Plaintiff's ability to perform work. Instead, the ALJ properly considered but discredited Dr. Guzmán's opinions, especially in light of the fact that part of Dr. Guzmán's opinion was premised on his determination that Plaintiff was disabled; a determination which is clearly reserved for the ALJ.

## IV.  CONCLUSION

The ALJ properly evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand based upon a violation of the substantial evidence rule, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of October 2021.

> s/Giselle López Soler
> GISELLE LOPEZ SOLER
> United States Magistrate Judge